**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RITCHARD YANOWITZ,

                Plaintiff,

    - against -

DIVATEX HOME FASHION, INC.,

                Defendant.

DIVATEX HOME FASHION, INC.,

                Counterclaim Plaintiff,

    - against -

RITCHARD YANOWITZ and
BRANDON YANOWITZ,

                Counterclaim Defendants.

15 Civ. 807 (KBF)

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT .................................................................................................................. 9

I.     PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS
CONTRACT CLAIM .................................................................................... 9

     A.     Plaintiff's Performance Under the Employment Agreement Is Disputed,
And Plaintiff Agreed to Certain Restrictive Covenants In Consideration
For The Payments He Now Seeks To Recover ..................................... 10

     B.     Plaintiff Cannot Recover Under the Employment Agreement If Divatex
Establishes That Plaintiff Breached His Fiduciary Duty of Loyalty During
His Employment or Engaged in Conduct That Would Have Allowed
Divatex to Terminate His Employment "For Cause" Under the
Employment Agreement .................................................................... 14

     C.     Plaintiff Has Not Established Entitlement To Any Vacation Pay ...................... 17

II.     PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS NEW
YORK LABOR LAW CLAIM ..................................................................... 18

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

Cases

*Am. Bldg. Maint. Co. v. ACME Prop. Servs.*,
    515 F. Supp. 2d 298 (N.D.N.Y. 2007)..............................................................................15

*Bompane v. Enzolabs, Inc.*,
    160 Misc. 2d 315, 608 N.Y.S.2d 989 (Sup. Ct. Suffolk Cnty. 1994)...............................16

*CBS Corp. v. Dumsday*,
    268 A.D.2d 350, 702 N.Y.S.2d 248 (1st Dep't 2000) ......................................................14

*Created Gemstones, Inc. v. Union Carbide Corp.*,
    47 N.Y.2d 250, 391 N.E.2d 987, 417 N.Y.S.2d 905 (1979)..............................................10

*Elco Shoe Mfrs., Inc. v. Sisk*,
    260 N.Y 100, 183 N.E. 191 (1932)...................................................................................14

*Feiger v. Iral Jewelry, Ltd.*,
    41 N.Y.2d 928, 394 N.Y.S.2d 626, 363 N.E.2d 350 (1977)..............................................15

*Fin. Tech. Int'l, Inc. v. Smith*,
    247 F. Supp. 2d 397 (S.D.N.Y. 2002)..........................................................................11, 12

*Fitzpatrick v. Am. Int'l Group, Inc.*, 10 Civ. 142 (MHD),
    2013 U.S. Dist. LEXIS 28604 (S.D.N.Y. Feb. 26, 2013).................................................16

*Frank Felix Assocs. v. Austin Drugs, Inc.*,
    111 F.3d 284 (2d Cir. 1997).............................................................................................11

*Graff v. Enodis Corp.*, 02 Civ. 5922 (JSR),
    2003 U.S. Dist. LEXIS 4899 (S.D.N.Y. Mar. 28, 2003) .................................................19

*Hicks v. T.L. Cannon Corp.*,
    35 F. Supp. 3d 329 (W.D.N.Y. 2014) ..............................................................................19

*Hutchinson v. Washburn*,
    80 A.D.367, 80 N.Y.S. 691 (2d Dep't 1903)...................................................................16

*JP Morgan Chase v. J.H. Elec. Of N.Y.*,
    69 A.D.3d 802, 893 N.Y.S.2d 237 (2d Dep't 2010) ........................................................10

*Karmilowicz v. The Hartford Fin'l Servs. Grp., Inc.*,
    494 F. App'x 153 (2d Cir. 2012) .....................................................................................19

*Lamdin v. Broadway Surface Adver. Corp.*,
    272 N.Y. 133, 5 N.E.2d 66 (1936)...................................................................................14

*Laro Maint. Corp. v. Culkin*,
    267 A.D.2d 431, 700 N.Y.S.2d 490 (2d Dep't 1999) ......................................................14

# TABLE OF AUTHORITIES (cont'd)

**Page**

*Lenel Sys. Int'l, Inc. v. Smith*,
    106 A.D.3d 1536, 966 N.Y.S.2d 618 (4th Dep't 2013)....................................13

*Novick v. AXA Network, LLC*,
    642 F.3d 304 (2d Cir. 2011)........................................................................11

*P & E Properties, Inc. v. United Natural Foods, Inc.*,
    713 F. Supp. 2d 262 (S.D.N.Y. 2010) ........................................................10

*Phansalkar v. Andersen Weinroth & Co., L.P.*,
    344 F.3d 184 (2d Cir. 2003).....................................................................7, 14

*Phoenix Home Life Mutual Ins. Co. v. Caruana*,
    217 A.D.2d 959, 630 N.Y.S.2d 172 (4th Dep't 1995) .................................11

*Reilly v. Polychrome Corp.*,
    872 F. Supp. 1265 (S.D.N.Y. 1995)...........................................................12

*Rudman v. Cowles Commc'ns, Inc.*,
    30 N.Y.2d 1, 280 N.E.2d 867, 330 N.Y.S.2d 33 (1972)..............................11

*Schanfield v. Sojitz Corp. of Am.*,
    663 F. Supp. 2d 305 (S.D.N.Y. 2009).........................................................15

*Tierney v. Capricorn Investors, L.P.*,
    189 A.D.2d 629, 592 N.Y.S.2d 700 (1st Dep't 1993) .................................19

*Wallack Freight Lines, Inc. v. Next Day Express, Inc.*,
    273 A.D.2d 462, 711 N.Y.S.2d 891 (2d Dep't 2000) ..................................15

*Zaitsev v. Salomon Bros.*,
    60 F.3d 1001 (2d Cir. 1995)........................................................................19

*Zubair v. Entech Eng'g P.C.*,
    808 F. Supp. 2d 592 (S.D.N.Y. 2011)..........................................................20

Statutes

N.Y. Labor Law § 198 ....................................................................................... 19

Other Authorities

N.Y.S. Dep't of Labor, Frequently Asked Questions,
    *available at* http://labor.ny.gov/workerprotection/laborstandards/faq.shtm.................... 18

Defendant and Counterclaim-Plaintiff Divatex Home Fashion, Inc. ("Divatex"), by and through its attorneys Seward & Kissel LLP, respectfully submits this memorandum of law in opposition to Plaintiff and Counterclaim-Defendant Ritchard Yanowitz's ("Plaintiff" or "Yanowitz") Motion for Summary Judgment.

## PRELIMINARY STATEMENT

In this employment dispute, Plaintiff claims that he is owed approximately $400,000 in allegedly unpaid compensation under a written employment agreement notwithstanding his own flagrant breaches of the same agreement. Yet, before Divatex had even answered to the Complaint – which answer included eleven counterclaims against Plaintiff and his son, another former Divatex employee, arising out of Plaintiff's breach and other tortious conduct – Plaintiff filed the instant motion for summary judgment, claiming that there are no genuine issues of material fact, and that he is entitled, as a matter of law, to judgment on his claims for breach of contract and violation of New York Labor Law. Plaintiff's premature motion should be denied for at least the following reasons:

First, Plaintiff's performance, a necessary and essential element of a breach of contract claim, is hotly disputed by the parties. Significantly, Plaintiff expressly agreed in his written employment agreement to certain restrictive covenants – the primary subject of Divatex's Counterclaims – as consideration for the very amounts he is seeking to recover under the agreement.

Second, although the parties have engaged in *no* discovery to date (in fact, Plaintiff filed this motion prior to the Court's initial pretrial conference at which a discovery schedule was entered), Divatex has alleged facts that could lead to further evidence to prove that Plaintiff's misconduct began prior to December 31, 2014, his final day of employment with Divatex. Thus, it appears that Plaintiff may have breached his fiduciary duty of loyalty owed to

Divatex or engaged in conduct that would have allowed Divatex to terminate his employment "for cause" under his employment agreement.  In either event, Plaintiff is entitled to no further amounts and may even be required to forfeit compensation earned during any period of disloyalty.

Third, Plaintiff has failed to set forth sufficient facts to demonstrate any entitlement to "vacation pay."  On this record, summary judgment should be denied, at a minimum, with respect to this portion of Plaintiff's claim.

Finally, Plaintiff's Labor Law claim is insufficient as a matter of law as set forth in Divatex's separate motion to dismiss, *see* ECF Nos. 15-17, 34, but also cannot be resolved on a summary judgment motion as any alleged entitlement to "wages" arises out of the contract that Plaintiff himself breached.  Because summary judgment should be denied on Plaintiff's contract claim, it is likewise inappropriate on Plaintiff's Labor Law claim.  Nor is there any basis to award liquidated damages without any facts in the record regarding Divatex's state of mind, as Divatex's good faith belief that its alleged underpayment of wages was in compliance with the law precludes recovery liquidated damages.

For all of these reasons, and as set forth in further detail below, the motion should be denied.

## STATEMENT OF FACTS

The following facts are taken from Divatex's Rule 56.1 Counter-Statement ("Divatex 56.1 Counter-Stmnt.") and any documents referenced therein.

From approximately January 1, 2008 through December 31, 2014, Plaintiff was employed as Divatex's Vice President for Sales and Merchandising pursuant to the terms of a written Employment Agreement, entered into by and between Divatex and Ritchard Yanowitz as

of June 2008, and effective as of January 1, 2008 (the "Employment Agreement").[1]  Divatex

56.1 Counter-Stmnt. ¶ 1.  Pursuant to the Employment Agreement, Plaintiff expressly agreed "to

perform and discharge faithfully, to the best of his abilities and in compliance with all applicable

laws, the duties which may be assigned to him from time to time by [Divatex]."  *Id.* ¶ 11.

Plaintiff further agreed "to devote his full time, attention and efforts solely and exclusively to the

business and affairs of [Divatex] and to act in its best interests at all times."  *Id.*  Plaintiff also

agreed that "[d]uring the term of this Agreement [i.e., January 1, 2008 through December 31,

2014], [Plaintiff] will not be employed by, engage in or devote any of his working time or

attention to any other business, enterprise or activity, whether or not same is pursued for gain,

profit or other pecuniary advantage . . . ."  *Id.*

As compensation "for the full, prompt, diligent and faithful performance of all the

duties and services to be performed by [Plaintiff] under th[e] [Employment] Agreement,"

Plaintiff was to be paid, among other things, Base Annual Salary, a Retention Bonus, and a

Performance Bonus, subject to the terms and conditions of the Employment Agreement.  *Id.*

¶ 12.  Plaintiff expressly agreed, however, that:

> [I]n consideration of compensation paid to [him] pursuant to this
> Agreement including Base Annual Salary, Retention Bonus, [and]
> Performance Bonus, [he would abide by certain restrictive
> covenants] while he is employed by [Divatex] and . . . for a two (2)
> year period after termination of [his] employment (a "Restricted
> Period") for any reason except if [his] employment is terminated
> by [Divatex] at the end of the Initial Term pursuant to paragraph 2
> or his employment is terminated pursuant to paragraphs 5(d) or
> 5(e).

---

[1]    A copy of the Employment Agreement is attached as Exhibit A to Divatex's Answer and
Counterclaims, dated Apr. 15, 2015 ("Answer").

*Id.* ¶ 13.[2]  Plaintiff also agreed, pursuant to the Employment Agreement, to protect Divatex's confidential information and trade secrets. *Id.* ¶ 15.

Plaintiff's employment was not terminated by Divatex at the end of the Initial Term (as defined in the Employment Agreement) pursuant to paragraph 2 and was not terminated pursuant to paragraphs 5(d) or 5(e) of the Employment Agreement.  *Id.* ¶ 14.  Rather, Plaintiff's employment concluded on December 31, 2014 due to the expiration of the Employment Agreement's Renewal Term.  *Id.*

Pursuant to the Employment Agreement, Divatex had the right to terminate Plaintiff's employment at any time "for cause," which is defined to include, among other things, "(i) [Plaintiff's] failure to perform or carry out his duties and responsibilities under this Agreement; (ii) [Plaintiff's] failure to comply with the directions of the Board of Directors or the President of [Divatex]; (iii) [Plaintiff's] gross negligence in the performance of his duties under this Agreement; (iv) [Plaintiff] conducting himself in such a manner which [Divatex] deems is either detrimental to the image and goodwill of [Divatex] or evidences his disloyalty to [Divatex]; (v) [Plaintiff's] appropriation (or attempted appropriation) of a material business opportunity of [Divatex], including attempting to secure or securing any personal profit in connection with any transaction entered into on behalf of [Divatex]; [and] (vi) the misappropriation (or attempted misappropriation by [Plaintiff] of any of [Divatex's] funds or property. . . ."  *Id.* ¶ 16.

In the months leading up to Plaintiff's final day of employment, on or about June 10, 2014, his son, Brandon Yanowitz, who was also a Divatex employee, gave two weeks' notice

---

[2]  Plaintiff also agreed that the Performance Bonus, if any, is payable only if Plaintiff "has not breached or violated the terms of this Agreement."  *See* Divatex 56.1 Counter-Stmnt. ¶ 13 n.1.

of his resignation from his position as Divatex's Senior Vice President of Sales.  *Id.* ¶ 17.

Although Brandon Yanowitz's employment was at-will, he also entered into a written agreement

with Divatex to, among other things, protect Divatex's confidential information and trade secrets

and to certain other post-employment restrictions necessary for the protection of the goodwill

and business of Divatex.[3]  *Id.* ¶ 18.  Shortly after Brandon Yanowitz tendered his resignation, but

prior to his final day of employment by Divatex, David Greenstein, Divatex's Chief Executive

Officer, learned that Brandon Yanowitz was leaving Divatex to work for Keeco Home and/or

Grassi Associates ("Keeco"), a home textile supplier specializing in fashion and basic top-of-the-

bed products, window, bed/bath accessories, and patio mats, and a direct competitor of Divatex.

*Id.* ¶ 19.  Although employment by a competitor was not prohibited under the Brandon

Agreement, Greenstein nevertheless asked Brandon Yanowitz to no longer report to work at

Divatex for the remainder of his working notice period.  *Id.* ¶ 20.  According to Plaintiff, he was

unaware that his son had planned to resign from Divatex or to join Keeco.  *Id.* ¶ 21.

       In or about September 2014, Brandon Yanowitz was observed meeting with a

buyer from Company A, a Divatex customer for nearly twenty years, for the purpose of soliciting

the business of Company A, despite his written agreement not to do so, and, on information and

belief, he was doing so through the use of Divatex's confidential pricing information and other

trade secrets.  *Id.* ¶ 22.  Greenstein informed Plaintiff of his son's misconduct and asked him to

intervene to protect Divatex's business and goodwill, but Plaintiff refused, stating that he could

not control the actions of his son and did not want to be involved.  *Id.* ¶ 23.  Although Divatex

ultimately retained the business of Company A, it took several additional meetings and great

---

[3]      A copy of the Employment, Non-Solicitation and Confidentiality Agreement dated October 10, 2005 and entered into by and between Brandon Yanowitz and Divatex (the "Brandon Agreement") is attached as Exhibit B to the Answer.

effort by Divatex to do so, and Plaintiff, who was Divatex's Vice President of Sales and Merchandising, was not involved in the efforts to retain this business after his son had nearly stolen it away from Divatex.  *Id.* ¶ 24.

Not long thereafter, on or about October 31, 2014, Greenstein informed Plaintiff by letter dated October 31, 2014 (the "October 31 Letter"),[4] that, assuming Plaintiff did not resign prior to December 31, 2014, his employment with Divatex would be concluding on such date due to the expiration of the Employment Agreement's Renewal Term.  *Id.* ¶ 25.  On or about December 29, 2014, in anticipation that Plaintiff would be out of the office on December 31, 2014, the final day of his employment with Divatex, Greenstein met with Plaintiff and provided him with a copy of an unsigned letter dated December 31, 2014 (the "Unsigned Letter"),[5] advising him of the terms under which he would be separated from Divatex.  *Id.* ¶ 26. The Unsigned Letter expressly reminded Plaintiff of his continuing obligations under the Employment Agreement, and further requested that he immediately return all company property and equipment in his possession or control, including but not limited to any documentation or information relating to the business of Divatex, its customers or potential customers.  *Id.* ¶ 27.

In a matter of days after Plaintiff's final day of employment, in or about the first week of January 2015, Divatex learned that Plaintiff was working for Keeco with his son, in direct and blatant contravention of his agreement not to work for a competitor during the two-year Restricted Period.  *Id.* ¶ 28.  On or about January 6, 2015, Divatex learned that Brandon Yanowitz, on behalf of Keeco, was soliciting Company B, another one of Divatex's customers, for the very same business that Divatex provides to Company B, and that, on information and

---

[4]     A copy of the October 31 Letter is attached as Exhibit A to the Affidavit of Ritchard Yanowitz, sworn to on April 6, 2015 ("Yanowitz Aff.").

[5]     A copy of the Unsigned Letter is attached as Exhibit B to the Yanowitz Affidavit.

belief, he did so through the use of Divatex's confidential pricing information and other trade secrets.  *Id.* ¶ 29.  Given the fact that Brandon Yanowitz's solicitation of Company B came less than one week after Plaintiff left the employ of Divatex, Divatex believes that it is likely Plaintiff participated in or otherwise assisted his son Brandon in connection with the solicitation of Company B by, among other things, providing him with Divatex's confidential pricing information and other trade secrets, which violates Sections 6 and 7 of the Employment Agreement.  *Id.*

Within days of its discovery, Divatex immediately sent both Ritchard and Brandon Yanowitz a letter demanding that they cease and desist from breaching their respective agreements, aiding and abetting each other's breaches, and engaging in other tortious conduct including but not limited to the improper solicitation of Companies A and B through the use of Divatex's confidential pricing information and other trade secrets.[6]  *Id.* ¶ 30.  On January 9, 2015, Divatex paid to Plaintiff through direct deposit his unpaid salary through December 31, 2014 and one week's vacation pay, less applicable withholdings and deductions.  *Id.* ¶ 10.[7]

Despite sending cease-and-desist letters to both Ritchard and Brandon Yanowitz, on or about January 16, 2015, Divatex learned that Brandon Yanowitz was soliciting yet another Divatex customer, Company C, when Greenstein witnessed Brandon Yanowitz meeting with Company C's buying team at an industry trade fair.  *Id.* ¶ 31.  Greenstein later observed both Brandon Yanowitz and Plaintiff meeting with a Company C representative, and given Plaintiff's employment at Keeco and the fact that this meeting occurred shortly after he left Divatex's

---

[6]   A copy of Divatex's letter to Plaintiff dated January 8, 2015 is attached as Exhibit C to the Yanowitz Affidavit.

[7]   These amounts would also be forfeited if Divatex proves that Plaintiff breached his duty of loyalty prior to the time when they were allegedly earned.  *See Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 203 (2d Cir. 2003).

employ, it is likely that Plaintiff participated in or otherwise assisted his son Brandon in connection with the solicitation of Company C by, among other things, providing him with Divatex's confidential pricing information and other trade secrets, which again violates Sections 6 and 7 of the Employment Agreement.  *Id.*

Following Greenstein's observations at the industry trade fair, Greenstein reviewed Divatex's sales records with respect to Company C, who had been a Divatex customer for many years.  *Id.* ¶ 32.  Divatex's sales records showed that in the fourth quarter of 2014, at a time when Brandon Yanowitz was working for Keeco but Plaintiff was still employed by Divatex and responsible for securing Company C's business, little, if any, effort was taken to do so, as Divatex's sales to Company C had decreased significantly as compared to prior years' sales.  *Id.*  Thus, it appeared to Greenstein that, during Plaintiff's final months of employment, he was not "perform[ing] and discharg[ing]" his duties "faithfully, to the best of his abilities," and that he was not "devot[ing] his full time, attention and efforts solely and exclusively to the business and affairs of [Divatex]" as he had expressly agreed to do.  *Id.*

On or about February 11, 2015, Divatex learned additional details of Ritchard and/or Brandon Yanowitz's solicitation of Company B.  *Id.* ¶ 33.  Specifically, Divatex learned that Brandon Yanowitz, on behalf of Keeco, was quoting against Divatex's two incumbent programs with Company B in an amount approximately 2% to 3% below Divatex's current rates. *Id.*  Divatex's current rates constitute confidential pricing information which Ritchard and Brandon Yanowitz are aware of only as a result of their prior employment with Divatex.  *Id.*  To maintain its relationship with Company B, Divatex has been forced to lower its current rates with Company B by approximately 3.5%, at a cost presently estimated to be at least $4 million in annual sales to Divatex.  *Id.* ¶ 34.  Based on the foregoing, it was clear to Divatex by no later

than February 11, 2015, that, at a minimum, Plaintiff breached the restrictive covenants in the

Employment Agreement and his agreement to protect Divatex's confidential information and

trade secrets as a result of his conduct in January and February 2015.  *Id.* ¶ 35.

> Notwithstanding Plaintiff's blatant breaches of the Employment Agreement's

restrictive covenants – which were expressly agreed to "in consideration of compensation paid to

[him] pursuant to this Agreement including Base Annual Salary, Retention Bonus, [and]

Performance Bonus" (*see* Employment Agreement ¶ 7(a)) – Plaintiff claims that Divatex failed

to pay him a Performance Bonus, a Retention Bonus, and vacation pay in breach of the

Employment Agreement and in violation of New York Labor Law.  *See* Plaintiff's Complaint,

dated Feb. 3, 2015 ("Compl."), ¶¶ 5-17.  Plaintiff now seeks summary judgment on both claims,

before the parties have exchanged a single page of discovery.[8]  The motion should be denied.

### ARGUMENT

## I.     PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS CONTRACT CLAIM

> Plaintiff admits, as he must, that to establish a breach of contract there must be

"adequate performance by the plaintiff."  *See* Mov. Br. at 17.  Yet, nowhere in Plaintiff's two-

page argument that he is entitled to summary judgment on his contract claim does he address his

own performance.  This is because Plaintiff's performance under the Employment Agreement is

a matter that is vigorously contested by Divatex.  Specifically, Divatex contends that Plaintiff

stole and misused Divatex's confidential information and trade secrets and failed to abide by the

Employment Agreement's restrictive covenants, which Plaintiff expressly agreed to "in

consideration of compensation paid to [him] pursuant to this Agreement including Base Annual

---

[8]     Divatex has filed a separate motion pursuant to Fed. R. Civ. P. 56(d) to defer or deny Plaintiff's motion for summary judgment and to allow Divatex to take discovery with regard to Plaintiff's misconduct.

Salary, Retention Bonus, [and] Performance Bonus," compensation in excess of $3 million during the period from 2008 to 2014. Divatex 56.1 Counter-Stmnt. ¶ 13. Moreover, based on the evidence currently available to Divatex, it appears that Plaintiff may have breached his fiduciary duty of loyalty owed to Divatex prior to December 31, 2014 and engaged in conduct that would have allowed Divatex to terminate his employment "for cause" under the Employment Agreement, and only through discovery will Divatex know the full extent of Plaintiff's misconduct. Under any one of these scenarios, summary judgment is not appropriate.

    **A.**    **Plaintiff's Performance Under the Employment Agreement Is Disputed, And Plaintiff Agreed to Certain Restrictive Covenants In Consideration For The Payments He Now Seeks To Recover**

Under New York law, a plaintiff's performance under a contract is an essential element of a breach of contract claim. *See P & E Properties, Inc. v. United Natural Foods, Inc.*, 713 F. Supp. 2d 262, 266-67 (S.D.N.Y. 2010) (citing *JP Morgan Chase v. J.H. Elec. Of N.Y.*, 69 A.D.3d 802, 803, 893 N.Y.S.2d 237 (2d Dep't 2010)). Thus, where a plaintiff's performance is in dispute, summary judgment should be denied. *See id.* at 267 (denying summary judgment where performance "is hotly disputed by the parties, and [defendant] has produced evidence suggesting that [plaintiff] was not performing its services in good faith"). Summary judgment is particularly inappropriate where, as here, a plaintiff and a counterclaim-defendant assert competing contract claims based on the same agreement, thus raising factual issues as to performance. *See Created Gemstones, Inc. v. Union Carbide Corp.*, 47 N.Y.2d 250, 255, 391 N.E.2d 987, 990, 417 N.Y.S.2d 905, 907 (1979) (holding that summary judgment granted in error, because liability on one party's contract claim, if any, must await resolution of the other party's competing claim on the same contract; "If, after trial, it is determined that defendant did in fact breach, then plaintiff's liability on the counterclaims would be extinguished to the extent

that it was damaged by the breach."); *see also Phoenix Home Life Mutual Ins. Co. v. Caruana*, 217 A.D.2d 959, 959, 630 N.Y.S.2d 172, 173 (4th Dep't 1995) (denying summary judgment to employee where employer's contract claim was "inextricably interwoven" with employee's counterclaim to certain commission payments under the same contract).

The Second Circuit, citing well-settled New York law, has held that whether separate promises are mutually dependent on each other, "the breach of one undoing the obligations under the other, is a question of fact." *See Novick v. AXA Network, LLC*, 642 F.3d 304, 312 (2d Cir. 2011) (quoting *Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13, 280 N.E.2d 867, 330 N.Y.S.2d 33, 42 (1972)). Significantly, "[w]hen the promises of the parties are concurrent and dependent, either party defaulting in performance cannot, in the course of performance, sustain an action against the other because he has also defaulted." *Id.* (citation omitted).[9] This is precisely the case here, because Plaintiff agreed to the restrictive covenants in the Employment Agreement "in consideration of compensation paid to [Plaintiff] pursuant to this Agreement including Base Annual Salary, Retention Bonus, [and] Performance Bonus." *See* Divatex 56.1 Counter-Stmnt. ¶ 13.

Moreover, where a party to a contract commits a material breach, the other party is relieved of its obligation to perform. *See Fin. Tech. Int'l, Inc. v. Smith*, 247 F. Supp. 2d 397, 412 (S.D.N.Y. 2002) (citing *Frank Felix Assocs. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997)). The question of whether a breach is material is a question of law, but where the question of "whether a breach has occurred at all depends . . . on disputed questions of fact,"

---

[9]     The Second Circuit in *Novick* determined only that the district court erred in ordering a partial final judgment on defendant's counterclaim, and therefore did not "express[] a view on the merits of summary judgment." 642 F.3d at 313. The Court nevertheless appeared to question the district court's conclusion with respect to summary judgment and whether defendant would ultimately recover anything after plaintiff's competing contract claim was adjudicated.

summary judgment should be denied.  *Id.*; *see also Reilly v. Polychrome Corp.*, 872 F. Supp. 1265, 1266 (S.D.N.Y. 1995) (granting defendants' motion for summary judgment as to plaintiff-employee's claim to unpaid salary where agreement required employee to "render exclusive and full-time services to [defendant], . . . and, in connection therewith, to perform such duties as he shall reasonably be directed to perform," and defendant established that plaintiff materially breached the agreement).

As an initial matter, and for the avoidance of doubt, the restrictive covenants in the Employment Agreement apply during Plaintiff's employment and for a two-year "Restricted Period" thereafter.  That Plaintiff purportedly "expressed [his] disagreement to Mr. Greenstein" regarding the restrictive covenants on December 29, 2014, *see* Yanowitz Aff. ¶ 3, does not change the plain language of the Employment Agreement or the undisputed fact that Plaintiff's employment was not terminated by Divatex at the end of the Initial Term (as defined in the Employment Agreement) pursuant to paragraph 2 and was not terminated pursuant to paragraphs 5(d) or 5(e) of the Employment Agreement.  *See* Divatex 56.1 Counter-Stmnt. ¶ 14.  Rather, Plaintiff's employment concluded on December 31, 2014 due to the expiration of the Employment Agreement's Renewal Term.  *Id.*

Here, Divatex has set forth a number of facts which demonstrate that Plaintiff has materially breached the restrictive covenants or, at least, that Plaintiff's performance of the restrictive covenants under the Employment Agreement is in dispute.  *See* Divatex 56.1 Counter-Stmnt. ¶¶ 28-35.  Among other things, Plaintiff commenced employment at a Divatex competitor within days of his resignation and began immediately soliciting Divatex's customers through the use of Divatex's confidential pricing information and trade secrets.  *Id.*  Significantly, Plaintiff agreed to abide by the restrictive covenants that he so blatantly breached "*in consideration of*

*compensation paid to [him] pursuant to this Agreement including Base Annual Salary, Retention*

*Bonus, [and] Performance Bonus*," the very same compensation he is seeking to recover in this

action. *Id.* ¶ 13 (emphasis added). Thus, it is entirely appropriate for Divatex to withhold

payment of these amounts based on Plaintiff's breach. *See Lenel Sys. Int'l, Inc. v. Smith*, 106

A.D.3d 1536, 1537, 966 N.Y.S.2d 618, 619 (4th Dep't 2013) (employer relieved of its obligation

to grant defendant stock options under contract which expressly provided, "[i]n consideration of

the grant of [the options]," defendant would not "directly or indirectly, as an employee . . . ,

conduct business in competition in any way" with employer's business and defendant became

employed by a competing company within weeks of his resignation). As the Court in *Lenel*

noted, "the absence of an explicit forfeiture-for-competition clause in the Option Agreements

does not prevent plaintiff from seeking rescission of the stock options under the circumstances of

this case." *Id.* at 1539, 966 N.Y.S.2d at 621.[10]

        In his Moving Brief, Plaintiff dismisses Divatex's Counterclaims "illogical,

frivolous, and irrelevant to this motion," *see* Mov. Br. at 2 n.1, but hyperbole aside, Plaintiff fails

to account for the number of disputed issues of fact raised by his own misconduct. Indeed,

whether Plaintiff has performed, breached, and/or whether that breach is material are all issues of

fact that mandate denial of Plaintiff's motion.

---

[10]     Lest there be any doubt, Plaintiff cannot argue that this would result in forfeiture of
        earned wages, because, as set forth in Divatex's motion to dismiss, Plaintiff has failed to
        state a claim to any "wages" under New York Labor Law. *See* ECF Nos. 15-17, 34.

**B.**    **Plaintiff Cannot Recover Under the Employment Agreement If Divatex Establishes That Plaintiff Breached His Fiduciary Duty of Loyalty During His Employment or Engaged in Conduct That Would Have Allowed Divatex to Terminate His Employment "For Cause" Under the Employment Agreement**

Under New York law, an employee owes an undivided duty of loyalty to his employer as follows:

> He is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties. Not only must the employee or agent account to his principal for secret profits but he also *forfeits his right to compensation for services rendered by him if he proves disloyal.*

*Lamdin v. Broadway Surface Adver. Corp.*, 272 N.Y. 133, 138, 5 N.E.2d 66, 67 (1936) (emphasis added) (citations omitted); *see also Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003). In addition to being prohibited from acting inconsistent with an employer's interests, an employee also has an affirmative duty to act in his employer's best interests at all times. *Elco Shoe Mfrs., Inc. v. Sisk*, 260 N.Y 100, 103, 183 N.E. 191, 192 (1932) ("Agents are bound at all times to exercise the utmost good faith to their principals."). The proper measure of damages for breach of the duty of loyalty is forfeiture of the compensation received during the period of disloyalty. *Phansalkar*, 344 F.3d at 203; *Lamdin*, 272 N.Y. at 138.

Courts repeatedly have held that under New York law, an employee may not, consistent with his duty of loyalty, use an employer's confidential information to pursue business opportunities for himself. *See CBS Corp. v. Dumsday*, 268 A.D.2d 350, 353, 702 N.Y.S.2d 248, 251 (1st Dep't 2000) (claim against employees stated cause of action for breach of duties because employees used confidential information to obtain customer contract); *see also Laro Maint. Corp. v. Culkin*, 267 A.D.2d 431, 433, 700 N.Y.S.2d 490, 492 (2d Dep't 1999) (employees were disloyal because they used plaintiff's proprietary secrets to build competing

business while still employed); *Am. Bldg. Maint. Co. v. ACME Prop. Servs.*, 515 F. Supp. 2d

298, 312-13 (N.D.N.Y. 2007) (denying motion to dismiss where plaintiff alleged former

employees used confidential information and engaged in negotiations with current and

prospective clients to establish competing businesses); *see also Schanfield v. Sojitz Corp. of Am.*,

663 F. Supp. 2d 305, 348 (S.D.N.Y. 2009) (granting summary judgment on breach of loyalty

claim to employer *sua sponte* where employee transmitted confidential employer documents to

third parties).[11]

       Relatedly, the Employment Agreement provides that Divatex had the right to

terminate Plaintiff's employment at any time "for cause," which is defined to include, among

other things, "[Plaintiff] conducting himself in such a manner which [Divatex] deems is either

detrimental to the image and goodwill of [Divatex] or evidences his disloyalty to [Divatex]," and

"[Plaintiff's] appropriation (or attempted appropriation) of a material business opportunity of

[Divatex], including attempting to secure or securing any personal profit in connection with any

transaction entered into on behalf of [Divatex]."  Divatex 56.1 Counter-Stmnt. ¶ 16.  Thus, a

breach of the duty of loyalty plainly permits termination "for cause" under the Employment

Agreement.  Although Plaintiff's employment with Divatex ended as a result of the expiration of

the Employment Agreement, if Divatex were to establish that Plaintiff engaged in acts of

disloyalty and therefore Divatex could have terminated Plaintiff "for cause" prior to December

31, 2014, Plaintiff could not claim that any further amounts are due and owing to him under the

---

[11]    While an employee may take preparatory steps to compete with his employer, an
employee is not permitted to use his employer's confidential information in doing so
without being disloyal.  *Feiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d 928, 929, 394 N.Y.S.2d
626, 626, 363 N.E.2d 350 (1977); *see also Wallack Freight Lines, Inc. v. Next Day
Express, Inc.*, 273 A.D.2d 462, 463, 711 N.Y.S.2d 891, 891 (2d Dep't 2000) ("[A]n
employee may incorporate a business prior to leaving his employer without breaking any
fiduciary duty unless the employee makes improper use of the employer's time, facilities,
or proprietary secrets in doing so.").

Employment Agreement.  *See Bompane v. Enzolabs, Inc.*, 160 Misc. 2d 315, 321-22, 608 N.Y.S.2d 989, 993 (Sup. Ct. Suffolk Cnty. 1994) (noting that "if 'good reason for [the] discharge . . . actually existed at the time of discharge, although it was then unknown to the employer . . . the employer may avail himself of such … in defense of' the action") (quoting *Hutchinson v. Washburn*, 80 A.D.367, 367, 80 N.Y.S. 691, 691 (2d Dep't 1903)); *see also Fitzpatrick v. Am. Int'l Group, Inc.*, 10 Civ. 142 (MHD), 2013 U.S. Dist. LEXIS 28604, at *91 (S.D.N.Y. Feb. 26, 2013) ("[A]n employer may seek to justify its termination of an employee for cause based on information obtained after the termination.").

Based on the facts currently known to Divatex, it appears that, in addition to his post-employment breaches, Plaintiff also engaged in such conduct prior to December 31, 2014. Specifically, after Brandon Yanowitz resigned and joined a competitor in June 2014, Plaintiff professed ignorance of his son's intentions, a claim that in hindsight appears to be a lie since Plaintiff later joined Brandon Yanowitz at Keeco days after his contract expired.  *See* Divatex 56.1 Counter-Stmnt. ¶ 13.   Plaintiff also did nothing to intervene and protect his employer's business and goodwill after his son was observed soliciting one of Divatex's long-time customers in September 2014.  *Id.* ¶ 15.   And, perhaps most significantly, after Greenstein observed Plaintiff soliciting the business of Company C, another long-time Divatex customer, in January 2015, he reviewed Divatex's sales records with respect to Company C.  *Id.*  Divatex's sales records showed that in the fourth quarter of 2014, at a time when Plaintiff's son Brandon Yanowitz was working for Keeco but Plaintiff was still employed by Divatex and responsible for securing Company C's business, little, if any, effort was taken to do so, as Divatex's sales to Company C had decreased significantly as compared to prior years' sales.  *Id.*  Thus, it appeared to Greenstein that, during Plaintiff's final months of employment, he was not "perform[ing] and

16

discharg[ing]" his duties "faithfully, to the best of his abilities," and that he was not "devot[ing] his full time, attention and efforts solely and exclusively to the business and affairs of [Divatex]" as he had expressly agreed to do.  *Id.*; *see also* Employment Agreement ¶ 1(b).  Indeed, Plaintiff was employed by Keeco a mere days after his final day of employment with Divatex.  *See* Divatex 56.1 Counter-Stmnt. ¶ 28.  Certainly, he was not hired on twenty-four hours' notice.

Plaintiff and his son, Brandon Yanowitz, had worked together in Divatex's sales department for years.  *Id.* ¶¶ 2, 9.  The father-son team worked closely together, with Plaintiff supervising his son, and they even lived in the same town in New Jersey.  *See* Plaintiff's Civil Cover Sheet; Summons to Brandon Yanowitz.  As such, they had access to an incredible amount of Divatex's confidential information, which they both agreed, by written contract, to protect. Plaintiff was paid handsome sums from 2008 to 2014 – more than $3 million in Base Salary, Performance Bonuses, and Retention Bonuses, *see* Employment Agreement, Appendix – yet, despite Plaintiff's blatant breaches of the Employment Agreement, he claims he is owed more. Although only through discovery will Divatex know the full extent of Plaintiff's misconduct, it is clear that summary judgment, on this record, is unwarranted.

### C.  Plaintiff Has Not Established Entitlement To Any Vacation Pay

In support of his contract claim to $13,529.82 of vacation pay, Plaintiff merely cites paragraph 3(e) of the Employment Agreement, *see* Plaintiff's Rule 56.1 Statement ¶ 3, which provides that Plaintiff "shall be entitled to vacations as set forth in [Divatex's] Executive Handbook or as agreed upon in writing with the Board of Directors or the President of [Divatex], which shall be taken at such time or times as shall be mutually agreed to by [Divatex] or [Plaintiff]."  Employment Agreement ¶ 3(e).  Notably, this provision says nothing about payment of unused vacation time.  Nor does Plaintiff set out *any* facts with respect to how many vacation

days he was supposedly granted by Divatex, how many vacation days he supposedly took in

2014 (which is likely disputed in any event), or Divatex's alleged policy with respect to unused

vacation time.  This is fatal to his motion for summary judgment with respect to vacation pay.

> As stated by the New York State Department of Labor:

> Under the New York State Labor Law, payment for time not actually worked is not required unless the employer has established a policy to grant such pay. Holidays, sick time and/or vacations fall under "time not worked." When an employer does decide to create a benefit policy, that employer is free to impose any conditions they choose.

*See* N.Y.S. Dep't of Labor, Frequently Asked Questions, *available at*

http://labor.ny.gov/workerprotection/laborstandards/faq.shtm.  The Department of Labor further

notes:

> Whether an employer must pay for unused time depends upon the terms of the vacation and/or resignation policy. New York courts have held that an agreement to give benefits or wage supplements, like vacation, can specify that employees lose accrued benefits under certain conditions.

*Id.* (citation omitted).  Because Plaintiff has failed to set forth sufficient facts (which are likely

disputed in any event) to establish his purported entitlement to vacation pay, summary judgment

should be denied.

## II.    PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS NEW YORK LABOR LAW CLAIM

Putting aside any disputed facts – and there are many – Divatex has conclusively

established in its motion to dismiss that Plaintiff's New York Labor Law claim should be

dismissed as a matter of law.  *See* ECF Nos. 15-17, 34.  Nevertheless, even if the Court were to

deny Divatex's motion – and we respectfully submit that it should not – summary judgment is

not appropriate on Plaintiff's Labor Law Claim.

Indeed, this claim is premised on Plaintiff's purported contractual right to certain payments, which, as set forth above, cannot be resolved on a motion for summary judgment. Thus, insofar as Plaintiff's contractual right to these payments is in dispute, summary judgment is also not appropriate on Plaintiff's Labor Law claim.  *See Graff v. Enodis Corp.*, 02 Civ. 5922 (JSR), 2003 U.S. Dist. LEXIS 4899, at *3 n.2 (S.D.N.Y. Mar. 28, 2003) (noting that plaintiff's Labor Law claim "rises or falls with his breach of contract claim").  In other words, if Plaintiff does not ultimately succeed on his contract claim, he has no Labor Law claim at all.  *See Karmilowicz v. The Hartford Fin'l Servs. Grp., Inc.*, 494 F. App'x 153, 158 (2d Cir. 2012) ("Inasmuch as we have held that [plaintiff] had no enforceable contractual right to the bonus payments, he cannot state a claim under sections 191 or 193 [of the New York Labor Law].");  *Zaitsev v. Salomon Bros.*, 60 F.3d 1001, 1004 (2d Cir. 1995) (where plaintiff's has no contract claim, "his claim of unpaid wages under New York Labor Law § 190 *et seq.* was properly dismissed"); *see also Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d 629, 632, 592 N.Y.S.2d 700, 700 (1st Dep't 1993) (holding that a "plaintiff cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages").

Moreover, Plaintiff is not entitled liquidated damages if Divatex "proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  *See* N.Y. Labor Law § 198(1-a).  While Divatex respectfully submits that it has satisfied this standard based on the ample authority set forth in its motion to dismiss Plaintiff's Labor Law claim, at a minimum, Divatex's state of mind is an issue of fact that cannot be resolved on Plaintiff's premature summary judgment motion.  *See Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 349 (W.D.N.Y. 2014) (finding plaintiffs' request for liquidated damages premature based on "[v]ery limited discovery" and noting that "state of mind determinations" are generally reserved for the

trier of fact); *Zubair v. Entech Eng'g P.C.*, 808 F. Supp. 2d 592, 600 (S.D.N.Y. 2011) (court unable to determine whether defendants could prove a good faith basis as a matter of law on the limited record before the court).

## CONCLUSION

For the foregoing reasons, Divatex respectfully requests that the Court deny Plaintiff's motion for summary judgment, and grant Divatex such other or further relief as the Court deems just and proper.

New York, New York
April 27, 2015

SEWARD & KISSEL LLP

By:    /s Anne C. Patin
       Anne C. Patin
       Michael B. Weitman
       One Battery Park Plaza
       New York, New York  10004
       (212) 574-1200 (telephone)
       (212) 480-8421 (facsimile)

       *Attorneys for Defendant*
       *Divatex Home Fashion, Inc.*

SK 25855 0004 6500669