**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RITCHARD YANOWITZ,

Plaintiff,

- against -

DIVATEX HOME FASHION, INC.,

Defendant.

DIVATEX HOME FASHION, INC.,

Counterclaim Plaintiff,

- against -

RITCHARD YANOWITZ and
BRANDON YANOWITZ,

Counterclaim Defendants.

15 Civ. 807 (KBF)

**DEFENDANT'S RULE 56.1 COUNTER-STATEMENT**

Defendant-Counterclaim Plaintiff Divatex Home Fashion, Inc. ("Divatex") respectfully submits its Rule 56.1 Counter-Statement in response to Plaintiff-Counterclaim Defendant Ritchard Yanowitz's ("Plaintiff") Rule 56.1 Statement of Material Facts, dated April 9, 2015 ("Plaintiff's 56.1 Statement of Material Facts"). Pursuant to Local Rule 56.1, each numbered paragraph herein responds to the correspondingly numbered paragraph in Plaintiff's 56.1 Statement of Material Facts, any admissions are made for the purposes of this motion only, and additional facts with appropriate citations have been added as necessary.

**<u>Responses to Plaintiff's 56.1 Statement of Material Facts</u>**

1. Denies Plaintiff's characterization of the employment agreement, entered into by and between Divatex and Ritchard Yanowitz as of June 2008, and effective as of January 1, 2008

(the "Employment Agreement"), a copy of which is attached as Exhibit A to Divatex's Answer and Counterclaims, dated Apr. 15, 2015 ("Answer"), but admits that Plaintiff and Divatex entered into the Employment Agreement which governed the terms and conditions of Plaintiff's employment by Divatex, and except as expressly admitted, Divatex respectfully refers the Court to the Employment Agreement for its complete and accurate contents. *See* Answer, Ex. A; *see also* Declaration of David Greenstein, dated Apr. 23, 2015 ("Greenstein Decl."), ¶ 2.

2. Denies Plaintiff's characterization of the Employment Agreement, but admits that the Employment Agreement identified certain compensation to be paid by Divatex to Plaintiff, subject to the terms and conditions of the Employment Agreement, and except as expressly admitted, Divatex respectfully refers the Court to the Employment Agreement for its complete and accurate contents. *See* Answer, Ex. A.

3. Denies Plaintiff's characterization of the Employment Agreement, but admits that the Employment Agreement identified certain compensation to be paid by Divatex to Plaintiff, subject to the terms and conditions of the Employment Agreement, and that, with respect to vacation, the Employment Agreement provided that Plaintiff "shall be entitled to vacations as set forth in [Divatex's] Executive Handbook or as agreed upon in writing with the Board of Directors or the President of [Divatex], which shall be taken at such time or times as shall be mutually agreed to by [Divatex] or [Plaintiff]," and except as expressly admitted, Divatex respectfully refers the Court to the Employment Agreement and any documents incorporated by reference therein for their complete and accurate contents. *See* Answer, Ex. A.

4. Denies Plaintiff's characterization of the letter dated October 31, 2014 (the "October 31 Letter"), a copy of which is attached as Exhibit A to the Affidavit of Ritchard Yanowitz, sworn to on April 6, 2015 ("Yanowitz Aff."), but admits that Divatex informed

Yanowitz in the October 31 Letter that, assuming he did not resign prior to December 31, 2014, his employment would be concluding on such date, and except as expressly admitted, Divatex respectfully refers the Court to the October 31 Letter for its complete and accurate contents. *See* Yanowitz Aff. Ex. A; *see also* Greenstein Decl. ¶ 17.

5. Admits that the October 31 Letter contains the quotation set forth in paragraph 5, but except as expressly admitted, Divatex respectfully refers the Court to the October 31 Letter for its complete and accurate contents. *See* Yanowitz Aff. Ex. A.

6. Admits that Plaintiff did not tender his resignation from Divatex on or before December 31, 2014, but further states that Divatex thereafter learned that Plaintiff engaged in conduct prior to December 31, 2014 that may constitute, among other things, a breach of his fiduciary duty of loyalty owed to Divatex and "cause" under the Employment Agreement, and that only through discovery will Divatex know the full extent of Plaintiff's misconduct. *See infra* ¶ 32; *see also* Greenstein Decl. ¶¶ 25, 29-30.

7. Admits that on or about December 29, 2014, Yanowitz met with David Greenstein, Divatex's Chief Executive Officer, at which time Greenstein gave Yanowitz an unsigned letter dated December 31, 2014 (the "Unsigned Letter"), a copy of which is attached as Exhibit B to the Yanowitz Affidavit. *See* Greenstein Decl. ¶ 18.

8. Admits that the Unsigned Letter contains the quotation set forth in paragraph 8 and further states that the Unsigned Letter included additional language reminding Plaintiff of his continuing obligations under Sections 6 and 7 of the Employment Agreement which he blatantly breached, but except as expressly admitted, Divatex respectfully refers the Court to the Unsigned Letter for its complete and accurate contents. *See* Yanowitz Aff. Ex. B; *see also infra* ¶¶ 28-35.

9. Denies Plaintiff's characterization of the letter dated January 8, 2015 (the "January 8 Letter"), a copy of which is attached as Exhibit C to the Yanowitz Affidavit, and further states that the January 8 Letter was sent to Plaintiff after Divatex learned that Plaintiff engaged in conduct in direct and blatant contravention of his contractual obligations under the Employment Agreement and his fiduciary duty owed to Divatex as well as other tortious conduct, but except as expressly admitted, Divatex respectfully refers the Court to the January 8 Letter for its complete and accurate contents. *See* Yanowitz Aff. Ex. C; *see also infra* ¶¶ 28-35.

10. Admits that on January 9, 2015, Divatex paid to Plaintiff through direct deposit his unpaid salary through December 31, 2014 and one week's vacation pay, less applicable withholdings and deductions, and states that no further amounts are due as a result of Plaintiff's conduct described in further detail below. *See* Greenstein Decl. ¶ 23; *see also infra* ¶¶ 28-35.

**<u>Additional Material Facts Relevant to Plaintiff's Motion for Summary Judgment</u>**

11. Pursuant to the Employment Agreement, Plaintiff expressly agreed "to perform and discharge faithfully, to the best of his abilities and in compliance with all applicable laws, the duties which may be assigned to him from time to time by [Divatex], its Board of Directors or the President of [Divatex]." Plaintiff further agreed "to devote his full time, attention and efforts solely and exclusively to the business and affairs of [Divatex] and to act in its best interests at all times." Plaintiff also agreed that "[d]uring the term of this Agreement [i.e., January 1, 2008 through December 31, 2014], [Plaintiff] will not be employed by, engage in or devote any of his working time or attention to any other business, enterprise or activity, whether or not same is pursued for gain, profit or other pecuniary advantage . . . ." *See* Greenstein Decl. ¶ 3 (quoting Answer, Ex. A ¶ 1(b)).

12. The Employment Agreement further provides that "[s]ubject to the terms and

conditions of this Agreement, for the full, prompt, diligent and faithful performance of all the duties and services to be performed by [Plaintiff] under this Agreement," Divatex would pay Plaintiff, among other things, Base Annual Salary, a Retention Bonus, and a Performance Bonus. *See* Greenstein Decl. ¶ 4 (quoting Answer, Ex. A ¶ 3(a)).

13. Plaintiff expressly agreed, however, that "in consideration of compensation paid to [him] pursuant to this Agreement including Base Annual Salary, Retention Bonus, [and] Performance Bonus," he would abide by certain restrictive covenants "while he is employed by [Divatex] and . . . for a two (2) year period after termination of [his] employment (a 'Restricted Period') for any reason except if [his] employment is terminated by [Divatex] at the end of the Initial Term pursuant to paragraph 2 or his employment is terminated pursuant to paragraphs 5(d) or 5(e)." *See* Greenstein Decl. ¶ 5 (quoting Answer, Ex. A ¶ 7(a)).[1]

14. Plaintiff's employment was not terminated by Divatex at the end of the Initial Term (as defined in the Employment Agreement) pursuant to paragraph 2 and was not terminated pursuant to paragraphs 5(d) or 5(e) of the Employment Agreement. Rather, Plaintiff's employment concluded on December 31, 2014 due to the expiration of the Employment Agreement's Renewal Term. *See* Greenstein Decl. ¶ 6.

15. Plaintiff also agreed, pursuant to the Employment Agreement, to protect Divatex's confidential information and trade secrets. *See* Greenstein Decl. ¶ 7 (citing Answer, Ex. A ¶ 6).

16. Pursuant to the Employment Agreement, Divatex had the right to terminate Plaintiff's employment at any time "for cause," which is defined to include, among other things,

[1] Plaintiff also agreed that the Performance Bonus, if any, is payable only if Plaintiff "has not breached or violated the terms of this Agreement." *See* Greenstein Decl. ¶ 5 n.1 (quoting Answer, Ex. A ¶ 3(a)(3)).

"(i) [Plaintiff's] failure to perform or carry out his duties and responsibilities under this Agreement; (ii) [Plaintiff's] failure to comply with the directions of the Board of Directors or the President of [Divatex]; (iii) [Plaintiff's] gross negligence in the performance of his duties under this Agreement; (iv) [Plaintiff] conducting himself in such a manner which [Divatex] deems is either detrimental to the image and goodwill of [Divatex] or evidences his disloyalty to [Divatex]; (v) [Plaintiff's] appropriation (or attempted appropriation) of a material business opportunity of [Divatex], including attempting to secure or securing any personal profit in connection with any transaction entered into on behalf of [Divatex]; [and] (vi) the misappropriation (or attempted misappropriation by [Plaintiff] of any of [Divatex's] funds or property. . . ." *See* Greenstein Decl. ¶ 8 (quoting Answer, Ex. A ¶ 5(a)(1)).

17. On or about June 10, 2014, Plaintiff's son, Brandon Yanowitz, who was also a Divatex employee, gave two weeks' notice of his resignation from his position as Divatex's Senior Vice President of Sales. *See* Greenstein Decl. ¶ 9.

18. Although Brandon Yanowitz's employment was at-will, he entered into a written Employment, Non-Solicitation and Confidentiality Agreement with Divatex dated October 10, 2005 (the "Brandon Agreement") to, among other things, protect Divatex's confidential information and trade secrets and to certain other post-employment restrictions necessary for the protection of the goodwill and business of Divatex. *See* Greenstein Decl. ¶ 10; *see also* Answer, Ex. B.

19. Shortly after Brandon Yanowitz tendered his resignation, but prior to his final day of employment by Divatex, Greenstein learned that Brandon Yanowitz was leaving Divatex to work for Keeco Home and/or Grassi Associates ("Keeco"), a home textile supplier specializing in fashion and basic top-of-the-bed products, window, bed/bath accessories, and patio mats, and

a direct competitor of Divatex. *See* Greenstein Decl. ¶ 11.

20. Although employment by a competitor was not prohibited under the Brandon Agreement, Greenstein nevertheless asked Brandon Yanowitz to no longer report to work at Divatex for the remainder of his working notice period. During an exit interview, Brandon Yanowitz was reminded of his post-employment obligations under the Brandon Agreement. *See* Greenstein Decl. ¶ 12.

21. According to Plaintiff, he was unaware that his son had planned to resign from Divatex or to join Keeco. *See* Greenstein Decl. ¶ 13.

22. In or about September 2014, Brandon Yanowitz was observed meeting with a buyer from Company A, a Divatex customer for nearly twenty years, for the purpose of soliciting the business of Company A, despite his written agreement not to do so, and, on information and belief, he was doing so through the use of Divatex's confidential pricing information and other trade secrets. *See* Greenstein Decl. ¶ 14; *see also* Answer, Ex. B ¶¶ 2, 5.

23. Greenstein informed Plaintiff of his son's misconduct and asked him to intervene to protect Divatex's business and goodwill, but Plaintiff refused, stating that he could not control the actions of his son and did not want to be involved. *See* Greenstein Decl. ¶ 15.

24. Although Divatex ultimately retained the business of Company A, it took several additional meetings and great effort by Divatex to do so, and Plaintiff, who was Divatex's Vice President of Sales and Merchandising, was not involved in the efforts to retain this business after his son had nearly stolen it away from Divatex. *See* Greenstein Decl. ¶ 16.

25. Not long thereafter, on or about October 31, 2014, Greenstein informed Plaintiff in the October 31 Letter (Yanowitz Aff. Ex. A) that, assuming Plaintiff did not resign prior to December 31, 2014, his employment with Divatex would be concluding on such date due to the

expiration of the Employment Agreement's Renewal Term. *See* Greenstein Decl. ¶ 17.

26. On or about December 29, 2014, in anticipation that Plaintiff would be out of the office on December 31, 2014, the final day of his employment with Divatex, Plaintiff was provided with a copy of the Unsigned Letter (Yanowitz Aff. Ex. B), advising him of the terms under which he would be separated from Divatex. *See* Greenstein Decl. ¶ 18.

27. The Unsigned Letter expressly reminded Plaintiff of his continuing obligations under the Employment Agreement, and further requested that he immediately return all company property and equipment in his possession or control, including but not limited to any documentation or information relating to the business of Divatex, its customers or potential customers. *See* Greenstein Decl. ¶ 19; *see also* Yanowitz Aff. Ex. B.

28. In a matter of days after Plaintiff's final day of employment, Divatex learned that Plaintiff was working for Keeco with his son, in direct and blatant contravention of his agreement not to work for a competitor during the two-year Restricted Period. *See* Greenstein Decl. ¶ 20.

29. On or about January 6, 2015, Divatex learned from one of its customers, Company B, that Brandon Yanowitz, on behalf of Keeco, was soliciting Company B for the very same business that Divatex provides to Company B, and that, on information and belief, he did so through the use of Divatex's confidential pricing information and other trade secrets. Given the fact that Brandon Yanowitz's solicitation of Company B came less than one week after Plaintiff left the employ of Divatex, Divatex believes that it is likely Plaintiff participated in or otherwise assisted his son Brandon in connection with the solicitation of Company B by, among other things, providing him with Divatex's confidential pricing information and other trade secrets, which violates Sections 6 and 7 of the Employment Agreement. *See* Greenstein Decl. ¶

21.

30. Within days of its discovery, Divatex immediately sent both Ritchard and Brandon Yanowitz a letter demanding that they cease and desist from breaching their respective agreements, aiding and abetting each other's breaches, and engaging in other tortious conduct including but not limited to the improper solicitation of Companies A and B through the use of Divatex's confidential pricing information and other trade secrets. *See* Greenstein Decl. ¶ 22. A copy of Divatex's letter to Plaintiff dated January 8, 2015 is attached as Exhibit C to the Yanowitz Affidavit.

31. Despite sending cease-and-desist letters to both Ritchard and Brandon Yanowitz, on or about January 16, 2015, Divatex learned that Brandon Yanowitz was soliciting yet another Divatex customer, Company C, when Greenstein witnessed Brandon Yanowitz meeting with Company C's buying team at an industry trade fair. Greenstein later observed both Brandon Yanowitz and Plaintiff meeting with a Company C representative, and given Plaintiff's employment at Keeco and the fact that this meeting occurred shortly after he left Divatex's employ, it is likely that Plaintiff participated in or otherwise assisted his son Brandon in connection with the solicitation of Company C by, among other things, providing him with Divatex's confidential pricing information and other trade secrets, which again violates Sections 6 and 7 of the Employment Agreement. *See* Greenstein Decl. ¶ 24.

32. Following his observations at the industry trade fair, Greenstein reviewed Divatex's sales records with respect to Company C, who had been a Divatex customer for many years. Divatex's sales records showed that in the fourth quarter of 2014, at a time when Brandon Yanowitz was working for Keeco but Plaintiff was still employed by Divatex and responsible for securing Company C's business, little, if any, effort was taken to do so, as Divatex's sales to

Company C had decreased significantly as compared to prior years' sales. *Id.* Thus, it appeared to Greenstein that, during Plaintiff's final months of employment, he was not "perform[ing] and discharg[ing]" his duties "faithfully, to the best of his abilities," and that he was not "devot[ing] his full time, attention and efforts solely and exclusively to the business and affairs of [Divatex]" as he had expressly agreed to do. *See* Greenstein Decl. ¶ 25 (quoting Answer, Ex. A ¶ 1(b)).

33. On or about February 11, 2015, Divatex learned additional details of Ritchard and/or Brandon Yanowitz's solicitation of Company B. Specifically, Divatex learned that Brandon Yanowitz, on behalf of Keeco, was quoting against Divatex's two incumbent programs with Company B in an amount approximately 2% to 3% below Divatex's current rates. Divatex's current rates constitute confidential pricing information which Ritchard and Brandon Yanowitz are aware of only as a result of their prior employment with Divatex. *See* Greenstein Decl. ¶ 26.

34. To maintain its relationship with Company B, Divatex has been forced to lower its current rates with Company B by approximately 3.5%, at a cost presently estimated to be at least $4 million in annual sales to Divatex. *See* Greenstein Decl. ¶ 27.

35. Based on the foregoing, it was clear to Divatex by no later than February 11, 2015, that, at a minimum, Plaintiff breached his post-employment obligations to Divatex and his agreement to protect Divatex's confidential information and trade secrets as a result of his conduct in January and February 2015. *See* Greenstein Decl. ¶ 28.

New York, New York
April 27, 2015

SEWARD & KISSEL LLP

By: /s Anne C. Patin
Anne C. Patin
Michael B. Weitman
One Battery Park Plaza
New York, NY 10004
(212) 574-1200

*Attorneys for Divatex Home Fashion, Inc.*

SK 25855 0004 6499642