UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RITCHARD YANOWITZ,<br><br>       Plaintiff,<br><br> - against -<br><br>DIVATEX HOME FASHION, INC.,<br><br>       Defendant.<br><br>DIVATEX HOME FASHION, INC.,<br><br>       Counterclaim Plaintiff,<br><br> - against -<br><br>RITCHARD YANOWITZ and<br>BRANDON YANOWITZ,<br><br>       Counterclaim Defendants. | 15 Civ. 807 (KBF)<br><br>**DECLARATION OF DAVID GREENSTEIN** |

  I, David Greenstein, pursuant to 28 U.S.C. § 1746, declare and state as follows:

  1.  I am the Chief Executive Officer of Defendant-Counterclaim Plaintiff Divatex Home Fashion, Inc. ("Divatex"). I make this declaration in opposition to Plaintiff-Counterclaim Defendant Ritchard Yanowitz's ("Plaintiff" or "Yanowitz") Motion for Summary Judgment. The facts set forth herein are based on my personal knowledge and my review of records maintained by Divatex.

  2.  From approximately January 1, 2008 through December 31, 2014, Plaintiff was employed as Divatex's Vice President for Sales and Merchandising pursuant to the terms of a written Employment Agreement, entered into by and between Divatex and Ritchard Yanowitz as of June 2008, and effective as of January 1, 2008 (the "Employment Agreement"). A copy of the

Employment Agreement is attached to Divatex's Answer and Counterclaims, dated Apr. 15, 2015 ("Answer") as Exhibit A.

3.  Pursuant to the Employment Agreement, Plaintiff expressly agreed "to perform and discharge faithfully, to the best of his abilities and in compliance with all applicable laws, the duties which may be assigned to him from time to time by [Divatex], its Board of Directors or the President of [Divatex]." *See* Answer, Ex. A ¶ 1(b). Plaintiff further agreed "to devote his full time, attention and efforts solely and exclusively to the business and affairs of [Divatex] and to act in its best interests at all times." *Id.* Plaintiff also agreed that "[d]uring the term of this Agreement [i.e., January 1, 2008 through December 31, 2014], [Plaintiff] will not be employed by, engage in or devote any of his working time or attention to any other business, enterprise or activity, whether or not same is pursued for gain, profit or other pecuniary advantage . . . ." *Id.*

4.  The Employment Agreement further provides that "[s]ubject to the terms and conditions of this Agreement, for the full, prompt, diligent and faithful performance of all the duties and services to be performed by [Plaintiff] under this Agreement," Divatex would pay Plaintiff, among other things, Base Annual Salary, a Retention Bonus, and a Performance Bonus. *See* Answer, Ex. A ¶ 3(a)(1)-(3).

5.  Plaintiff expressly agreed, however, that "in consideration of compensation paid to [him] pursuant to this Agreement including Base Annual Salary, Retention Bonus, [and] Performance Bonus," he would abide by certain restrictive covenants "while he is employed by [Divatex] and . . . for a two (2) year period after termination of [his] employment (a 'Restricted Period') for any reason except if [his] employment is terminated by [Divatex] at the end of the

Initial Term pursuant to paragraph 2 or his employment is terminated pursuant to paragraphs 5(d) or 5(e)." *See* Answer, Ex. A ¶ 7(a).[1]

6.     Plaintiff's employment was not terminated by Divatex at the end of the Initial Term (as defined in the Employment Agreement) pursuant to paragraph 2 and was not terminated pursuant to paragraphs 5(d) or 5(e) of the Employment Agreement. Rather, Plaintiff's employment concluded on December 31, 2014 due to the expiration of the Employment Agreement's Renewal Term.

7.     Plaintiff also agreed, pursuant to the Employment Agreement, to protect Divatex's confidential information and trade secrets. *See* Answer, Ex. A ¶ 6.

8.     Pursuant to the Employment Agreement, Divatex had the right to terminate Plaintiff's employment at any time "for cause," which is defined to include, among other things, "(i) [Plaintiff's] failure to perform or carry out his duties and responsibilities under this Agreement; (ii) [Plaintiff's] failure to comply with the directions of the Board of Directors or the President of [Divatex]; (iii) [Plaintiff's] gross negligence in the performance of his duties under this Agreement; (iv) [Plaintiff] conducting himself in such a manner which [Divatex] deems is either detrimental to the image and goodwill of [Divatex] or evidences his disloyalty to [Divatex]; (v) [Plaintiff's] appropriation (or attempted appropriation) of a material business opportunity of [Divatex], including attempting to secure or securing any personal profit in connection with any transaction entered into on behalf of [Divatex]; [and] (vi) the misappropriation (or attempted misappropriation by [Plaintiff] of any of [Divatex's] funds or property. . . ." *See* Answer, Ex. A ¶ 5(a)(1).

---

[1]     Plaintiff also agreed that the Performance Bonus, if any, is payable only if Plaintiff "has not breached or violated the terms of this Agreement." *See* Answer, Ex. A ¶ 3(a)(3).

9. On or about June 10, 2014, Plaintiff's son, Brandon Yanowitz, who was also a Divatex employee, gave two weeks' notice of his resignation from his position as Divatex's Senior Vice President of Sales.

10. Although Brandon Yanowitz's employment was at-will, he entered into a written Employment, Non-Solicitation and Confidentiality Agreement with Divatex dated October 10, 2005 (the "Brandon Agreement") to, among other things, protect Divatex's confidential information and trade secrets and to certain other post-employment restrictions necessary for the protection of the goodwill and business of Divatex. A copy of the Brandon Agreement is attached to the Answer as Exhibit B.

11. Shortly after Brandon Yanowitz tendered his resignation, but prior to his final day of employment by Divatex, I learned that Brandon Yanowitz was leaving Divatex to work for Keeco Home and/or Grassi Associates ("Keeco"), a home textile supplier specializing in fashion and basic top-of-the-bed products, window, bed/bath accessories, and patio mats, and a direct competitor of Divatex.

12. Although employment by a competitor was not prohibited under the Brandon Agreement, I nevertheless asked Brandon Yanowitz to no longer report to work at Divatex for the remainder of his working notice period. During an exit interview, Brandon Yanowitz was reminded of his post-employment obligations under the Brandon Agreement.

13. According to Plaintiff, he was unaware that his son had planned to resign from Divatex or to join Keeco.

14. In or about September 2014, Brandon Yanowitz was observed meeting with a buyer from Company A, a Divatex customer for nearly twenty years, for the purpose of soliciting the business of Company A, despite his written agreement not to do so, and, on information and

belief, he was doing so through the use of Divatex's confidential pricing information and other trade secrets.

15. I informed Plaintiff of his son's misconduct and asked him to intervene to protect Divatex's business and goodwill, but Plaintiff refused, stating that he could not control the actions of his son and did not want to be involved.

16. Although Divatex ultimately retained the business of Company A, it took several additional meetings and great effort by Divatex to do so, and Plaintiff, who was Divatex's Vice President of Sales and Merchandising, was not involved in the efforts to retain this business after his son had nearly stolen it away from Divatex.

17. Not long thereafter, on or about October 31, 2014, I informed Plaintiff by letter dated October 31, 2014 (the "October 31 Letter"), a copy of which is attached as Exhibit A to the Affidavit of Ritchard Yanowitz, sworn to on April 6, 2015 ("Yanowitz Aff."), that, assuming Plaintiff did not resign prior to December 31, 2014, his employment with Divatex would be concluding on such date due to the expiration of the Employment Agreement's Renewal Term.

18. On or about December 29, 2014, in anticipation that Plaintiff would be out of the office on December 31, 2014, the final day of his employment with Divatex, I met with Plaintiff and provided him with a copy of an unsigned letter dated December 31, 2014 (the "Unsigned Letter"), a copy of which is attached as Exhibit B to the Yanowitz Affidavit, advising him of the terms under which he would be separated from Divatex.

19. The Unsigned Letter expressly reminded Plaintiff of his continuing obligations under the Employment Agreement, and further requested that he immediately return all company property and equipment in his possession or control, including but not limited to any

documentation or information relating to the business of Divatex, its customers or potential customers.

20. In a matter of days after Plaintiff's final day of employment, Divatex learned that Plaintiff was working for Keeco with his son, in direct and blatant contravention of his agreement not to work for a competitor during the two-year Restricted Period. *See* Answer, Ex. A ¶ 7(a)(1).

21. On or about January 6, 2015, Divatex learned from one of its customers, Company B, that Brandon Yanowitz, on behalf of Keeco, was soliciting Company B for the very same business that Divatex provides to Company B, and that, on information and belief, he did so through the use of Divatex's confidential pricing information and other trade secrets. Given the fact that Brandon Yanowitz's solicitation of Company B came less than one week after Plaintiff left the employ of Divatex, Divatex believes that it is likely Plaintiff participated in or otherwise assisted his son Brandon in connection with the solicitation of Company B by, among other things, providing him with Divatex's confidential pricing information and other trade secrets, which violates Sections 6 and 7 of the Employment Agreement.

22. Within days of its discovery, Divatex immediately sent both Ritchard and Brandon Yanowitz a letter demanding that they cease and desist from breaching their respective agreements, aiding and abetting each other's breaches, and engaging in other tortious conduct including but not limited to the improper solicitation of Companies A and B through the use of Divatex's confidential pricing information and other trade secrets. A copy of Divatex's letter to Plaintiff dated January 8, 2015 is attached as Exhibit C to the Yanowitz Affidavit.

23. On January 9, 2015, Divatex paid to Plaintiff through direct deposit all amounts owed to Plaintiff under the Employment Agreement, which consisted of his unpaid salary

through December 31, 2014 and one week's vacation pay, less applicable withholdings and deductions.

24. Despite sending cease-and-desist letters to both Ritchard and Brandon Yanowitz, on or about January 16, 2015, Divatex learned that Brandon Yanowitz was soliciting yet another Divatex customer, Company C, when I witnessed Brandon Yanowitz meeting with Company C's buying team at an industry trade fair. I later observed both Brandon Yanowitz and Plaintiff meeting with a Company C representative, and given Plaintiff's employment at Keeco and the fact that this meeting occurred shortly after he left Divatex's employ, it is likely that Plaintiff participated in or otherwise assisted his son Brandon in connection with the solicitation of Company C by, among other things, providing him with Divatex's confidential pricing information and other trade secrets, which again violates Sections 6 and 7 of the Employment Agreement.

25. Following my observations at the industry trade fair, I reviewed Divatex's sales records with respect to Company C, who had been a Divatex customer for many years. Divatex's sales records showed that in the fourth quarter of 2014, at a time when Brandon Yanowitz was working for Keeco but Plaintiff was still employed by Divatex and responsible for securing Company C's business, little, if any, effort was taken to do so, as Divatex's sales to Company C had decreased significantly as compared to prior years' sales. Thus, it appeared to me that, during Plaintiff's final months of employment, he was not "perform[ing] and discharg[ing]" his duties "faithfully, to the best of his abilities," and that he was not "devot[ing] his full time, attention and efforts solely and exclusively to the business and affairs of [Divatex]" as he had expressly agreed to do. *See* Answer, Ex. A ¶ 1(b).

26.     On or about February 11, 2015, Divatex learned additional details of Ritchard and/or Brandon Yanowitz's solicitation of Company B.  Specifically, Divatex learned that Brandon Yanowitz, on behalf of Keeco, was quoting against Divatex's two incumbent programs with Company B in an amount approximately 2% to 3% below Divatex's current rates. Divatex's current rates constitute confidential pricing information which Ritchard and Brandon Yanowitz are aware of only as a result of their prior employment with Divatex.

27.     To maintain its relationship with Company B, Divatex has been forced to lower its current rates with Company B by approximately 3.5%, at a cost presently estimated to be at least $4 million in annual sales to Divatex.

28.     Based on the foregoing, it was clear to Divatex by no later than February 11, 2015, that, at a minimum, Plaintiff breached his post-employment obligations to Divatex and his agreement to protect Divatex's confidential information and trade secrets as a result of his conduct in January and February 2015.

29.     In addition, it appears that Plaintiff also engaged in conduct prior to December 31, 2014 that may constitute, among other things, a breach of his fiduciary duty of loyalty owed to Divatex and "cause" under the Employment Agreement, and only through discovery will Divatex know the full extent of Plaintiff's misconduct.  *See supra* ¶ 25.

30.     Specifically, to understand the full extent of Plaintiff's misconduct, Divatex will require discovery of, among other things, (1) documents regarding Plaintiff's communications with his son, Brandon Yanowitz, including communications surrounding his resignation from Divatex and in the months thereafter when Plaintiff was still employed by Divatex and owed it a fiduciary duty of loyalty, (2) documents regarding Plaintiff's communications with Keeco, including any communications prior to December 31, 2014 which would establish that Plaintiff

breached his duty of loyalty or engaged in other conduct that may constitute "cause" under the Employment Agreement, and (3) documents regarding Plaintiff's communications with Companies A, B, C, and/or other Divatex customers, including any communications prior to December 31, 2014 which would establish that Plaintiff breached his duty of loyalty or engaged in other conduct that may constitute "cause" under the Employment Agreement.

31. I declare under penalty of perjury that the foregoing is true and correct. Executed on this 23 day of April, 2015

_____
David Greenstein

SK 25855 0004 6500247