**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RITCHARD YANOWITZ, | |
| Plaintiff, | |
| - against - | |
| DIVATEX HOME FASHION, INC., | |
| Defendant. | |
| DIVATEX HOME FASHION, INC., | |
| Counterclaim Plaintiff, | |
| - against - | 15 Civ. 807 (KBF) |
| RITCHARD YANOWITZ and BRANDON YANOWITZ, | |
| Counterclaim Defendants. | |
| BRANDON YANOWITZ, | |
| Counterclaim Plaintiff, | |
| - against - | |
| DIVATEX HOME FASHION, INC., and DAVID GREENSTEIN, | |
| Counterclaim Defendants. | |

**DIVATEX HOME FASHION, INC.'S AND DAVID GREENSTEIN'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**
**BRANDON YANOWITZ'S AMENDED COUNTERCLAIMS AND CLAIMS**
**AGAINST ADDITIONAL DEFENDANT ON THE COUNTERCLAIM**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT................................................................................................................ 5

I.      THE ALLEGEDLY DEFAMATORY STATEMENTS ARE PROTECTED BY A
        PRIVILEGE AND NOT THE PROPER SUBJECT OF A CLAIM FOR
        DEFAMATION ................................................................................................. 5

II.     BRANDON CANNOT ASSERT A CLAIM UNDER THE AGREEMENT OR
        THE NEW YORK LABOR LAW TO PAYMENTS FOR TIME HE DID NOT
        ACTUALLY WORK AND TO WHICH HE HAS NO CONTRACTUAL
        ENTITLEMENT................................................................................................. 9

CONCLUSION............................................................................................................. 11

Pursuant to Fed. R. Civ. P. 12(b)(6), Divatex Home Fashion, Inc. ("Divatex") and David Greenstein ("Greenstein"), by and through their attorneys Seward & Kissel LLP, respectfully submit this memorandum of law in support of their motion to dismiss the Amended Counterclaims and Claims Against Additional Defendant on the Counterclaim (ECF No. 73, the "Counterclaims") filed by Brandon Yanowitz ("Brandon").

## PRELIMINARY STATEMENT

Brandon's Counterclaims primarily arise out of a pre-litigation letter (the "Letter") signed by Greenstein in his capacity as Chief Executive Officer of Divatex and sent to Brandon and his new employer, in which Divatex demanded that Brandon cease and desist from breaching his written agreement with Divatex and engaging in other tortious conduct. Brandon ignored the demand, forcing Divatex to file claims against him, which were based on the allegations set forth in the Letter. Brandon now asserts three claims of his own, alleging that the statements in the Letter were false and defamatory. While Divatex and Greenstein deny these allegations, they need not be litigated based on the law of New York for more than a century, that was recently reaffirmed by the New York Court of Appeals in a February 2015 decision: statements that are pertinent to a pending or anticipated judicial proceeding are protected by a qualified privilege and cannot form the basis of a defamation claim absent circumstances not present here. Accordingly, Brandon's first three Counterclaims should be dismissed with prejudice.

In a recent amendment to the Counterclaims, and more than a year after his employment at Divatex concluded, Brandon also alleges that Divatex failed to pay him two weeks' salary – $7,615.38 – which he claims is "a breach of his employment agreement and a violation of the New York Labor Law." Counterclaims ¶ 29. As Brandon does not (and cannot) allege that he performed any work for Divatex during that two-week period, and he has no

contractual entitlement to these purported "wages," Brandon's fourth Counterclaim should also be dismissed with prejudice.

## STATEMENT OF FACTS[1]

Brandon is an individual residing in New Jersey and a former employee of Divatex, a New York corporation with its principal place of business in New York. Counterclaims ¶¶ 1-2.  Greenstein is an individual residing in Connecticut and Divatex's Chief Executive Officer.  *Id.* ¶ 3; *see also* Letter at 3, a copy of which is attached to the Counterclaims as Exhibit A.  On or about October 10, 2005, Brandon entered into an Employment, Non-Solicitation and Confidentiality Agreement with Divatex (the "Agreement"), pursuant to which he agreed, among other things, to protect Divatex's Confidential Information (as defined in the Agreement) and to certain other post-employment restrictions.  *See* Agreement, a copy of which was enclosed with the Letter and is included as part of Exhibit A to the Counterclaims.  Although Brandon apparently denies entering into the Agreement, *see* Answer ¶ 10, it does not contain any provision that would provide for any contractual notice period or severance payments due upon the termination of Brandon's employment.  On the contrary, the Agreement expressly provides that Brandon's employment was "for an unspecified duration and constitutes at-will employment."  Agreement ¶ 1.  Brandon further acknowledged in the Agreement that "this employment relationship may be terminated at any time, with or without good cause or for any or no cause, at the option of either the Company or [Brandon], *with or without notice*."  *Id.* (emphasis added).

---

[1]    Except as otherwise noted, the following facts are taken from the Counterclaims and any documents incorporated by reference in the Counterclaims.  *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citations omitted).  While the well-pleaded allegations of the Counterclaims are presumed to be true for purposes of this motion, *see Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001), Divatex and Greenstein deny any allegations of liability.

On or about June 10, 2014, Brandon "furnished Divatex with a two (2) week notice that he would be leaving the employ of Divatex." Counterclaims ¶ 27. Brandon contends that "[i]n retaliation thereof, Brandon's employment was terminated, without cause, by Divatex and without payment of his wages for the period of two weeks." *Id.* ¶ 28. Brandon does *not*, however, contend that he actually worked for Divatex during this two-week period. Nor can he, in good faith, allege as much.

After departing Divatex, Brandon became employed by Keeco Home and/or Grassi Associates ("Keeco"), a Divatex competitor. Letter at 1.[2] On or about January 8, 2015, Greenstein, acting in his capacity as Divatex's Chief Executive Officer, sent the Letter (on Divatex letterhead) to Brandon, Keeco, and Keeco's owner, Chris Grassi ("Grassi"), which, on its face, was sent "to put [Brandon] and [Keeco] on notice that [Brandon is] in breach of the Agreement and to demand that any and all wrongful conduct cease immediately." *Id.* ¶ 7 & Letter at 1. Specifically, the Letter block-quoted various provisions of the Agreement and identified conduct by Brandon that Divatex believed violated those provisions. Letter at 1-3. The Letter identified by name the customers of Divatex that it believed Brandon was soliciting on behalf of Keeco, and alleged, "upon information and belief," that Brandon was doing so through the use of Divatex's Confidential Information. *Id.* at 3. The Letter further alleged that Divatex solicited his father and co-counterclaim defendant, Ritchard Yanowitz ("Ritchard"), to join him at Keeco, which violated not only Brandon's Agreement, but Ritchard's employment agreement as well, which also contained certain restrictive covenants, including a non-competition clause. *Id.* In concluding, Divatex noted that it "intend[ed] to hold [Brandon]

---

[2]   Although Brandon alleges that he was not employed by both Keeco Home and/or Grassi Associates (but admits he was employed by one of the two), *see* Counterclaims ¶ 9, this distinction is not relevant for purposes of this motion.

3

and/or Keeco liable for any and all damages resulting from such wrongful conduct and will not

hesitate to seek legal intervention to recoup damages and/or obtain injunctive relief if we do not

receive written confirmation that your conduct will cease immediately." *Id.[3]*  Brandon further

alleges that Greenstein followed up the Letter with a telephone call to Grassi, in which he

"repeated the statements of the . . . Letter," and asked Grassi, "Did you get my love note; how

did you like my love note?" *Id.* ¶ 16.

Brandon did not cease and desist, and Divatex thereafter asserted nine claims

against him based on the allegations of the Letter, *see* ECF No. 29, which the Court has since

sustained as "adequately pled" in response to Brandon's motion to dismiss.  *See* ECF No. 59.

Following the denial of his motion, Brandon answered the claims against him and asserted three

Counterclaims against Divatex and Greenstein: (1) libel per se against Greenstein based on the

written statements in the Letter, Counterclaims ¶¶ 1-14, (2) slander per se against Greenstein

based on the same statements allegedly made to Grassi on a telephone call, *id.* ¶¶ 15-20, and

(3) libel and slander against Divatex based on its alleged failure to retract the foregoing

statements and its purported "ratifi[cation] [of] the conduct by Greenstein," *id.* ¶¶ 21-25.

Brandon contends that these statements "tend to disparage [him] in his profession and trade"

(although he does not identify any damage he allegedly suffered) and seeks "damages as

presumed by law and punitive damages." *Id.* ¶¶ 10, 13, 16, 19, 25.  In an amendment to his

pleading, Brandon asserted a fourth Counterclaim, alleging that "the failure by Divatex to pay

Brandon for the period of two (2) weeks [after the conclusion of his employment] is a breach of

his employment agreement and a violation of the New York Labor Law." *Id.* ¶ 29.  He seeks

---

[3]    Ritchard receieved a similar letter, which was also sent to Keeco and Grassi.  *See* Affidavit of
       Ritchard Yanowitz, sworn to Apr. 6, 2015 (ECF No. 22), ¶ 4 & Ex. C.  Ritchard, who is represented
       by the same attorney as his son, has not asserted a claim for defamation.

recovery of $7,615.38, plus liquidated damages and "all other remedies, as provided for under the New York Labor Law and common law." *Id.*

The Counterclaims fail as a matter of law.

## ARGUMENT

## I.

## THE ALLEGEDLY DEFAMATORY STATEMENTS ARE PROTECTED BY A PRIVILEGE AND NOT THE PROPER SUBJECT OF A CLAIM FOR DEFAMATION

To state a claim for defamation under New York law, a plaintiff (or, in this case, a counterclaim plaintiff) must allege: "(1) a false statement, (2) published without privilege or authorization to a third party, (3) constituting fault as judged by, at a minimum, a negligence standard, and (4) causing special harm or constituting defamation per se." *Bernstein v. Seeman*, 593 F. Supp. 2d 630, 635 (S.D.N.Y. 2009) (citing *Salvatore v. Kumar*, 45 A.D.3d 560, 563, 845 N.Y.S.2d 384, 388 (2d Dep't 2007)). New York law, however, has long since recognized – and the New York Court of Appeals recently affirmed – that certain types of statements are protected by a qualified privilege and therefore cannot form the basis of a defamation claim except in a limited set of circumstances not present here. *See Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718, 4 N.Y.S.3d 581, 28 N.E.3d 15, 18 (2015) (citing *Youmans v. Smith*, 153 N.Y. 214, 47 N.E. 265 (1897)). The Counterclaims are based on precisely such privileged statements.[4]

For years, numerous federal and state courts in New York have protected as privileged statements by parties and their attorneys that are "pertinent" to pending or anticipated litigation. *See, e.g.*, *Officemax Inc. v. Cinotti*, 966 F. Supp. 2d 74, 81 (E.D.N.Y. 2013)

---

[4]   Although not the subject of the instant motion, Divatex and Greenstein expressly reserve their rights to challenge the sufficiency of the Counterclaims for, among others, the following reasons: (1) the statements in the Letter are non-actionable opinions, (2) the statements in the Letter are true, (3) the statements in the Letter are not defamatory, and (4) Brandon has suffered no actual damages.

(dismissing defamation claim against plaintiff's former employer based on pre-litigation letter sent to new employer alleging breach of an agreement); *Bernstein*, 593 F. Supp. 2d at 636 (dismissing defamation claim against plaintiff's former employer based on a submission to the EEOC and a pre-litigation letter to plaintiff copying a third party); *Sexter & Warmflash, P.C. v. Margrabe*, 38 A.D.3d 163, 174, 828 N.Y.S.2d 315, 325 (1st Dep't 2007) (dismissing defamation claim based on "a letter among parties and counsel on the subject of pending or prospective litigation"); *Vodopia v. Ziff-Davis Publ'g Co.*, 243 A.D.2d 368, 368, 663 N.Y.S.2d 178, 179 (1st Dep't 1997) (dismissing defamation claim based on letter by counsel to plaintiff-attorney and his client during negotiations to settle a threatened litigation); *Lieberman v. Hoffman*, 239 A.D.2d 273, 273, 658 N.Y.S.2d 18, 19 (1st Dep't 1997) (dismissing defamation claim based on letter to plaintiff threatening potential litigation on behalf of plaintiff's former employee).[5]  Whether a statement is "pertinent" to judicial proceedings is "a question of law for the court[,] . . . [and] in answering that question, any doubts are to be resolved in favor of pertinence."  *Sexter & Warmflash*, 38 A.D.3d 173, 828 N.Y.S.2d at 324 (citations omitted).  Indeed, "[n]o action for defamation exists unless the statement is so obviously impertinent as not to admit discussion of pertinence," and "anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability" is deemed privileged. *Grasso*, 164 A.D.2d at 479, 564 N.Y.S.2d at 578.  Put another way, "[t]his test of pertinency is extremely liberal."  *Id.*

---

[5]   *See also O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995) (dismissing defamation claim against former employer, its officers, and its attorneys for various statements that were "relevant or pertinent to the litigation"); *Bisogno v. Borsa*, 101 A.D.3d 780, 781, 954 N.Y.S.2d 896, 896-97 (2d Dep't 2012) (dismissing defamation claim based on statements that were "made in the course of either a judicial or quasi-judicial proceeding and, as a matter of law, were material and pertinent to the issue to be resolved therein"); *Grasso v. Mathew*, 164 A.D.2d 476, 479, 564 N.Y.S.2d 576, 578 (3d Dep't 1991) (dismissing defamation claim based on letter to plaintiff-attorney's client regarding the attorney's conduct in a prior and pending litigation).

Lest there be any doubt, in February 2015, the New York Court of Appeals reaffirmed this longstanding principle of New York law and unambiguously "h[e]ld that statements made prior to the commencement of an anticipated litigation are privileged." *See Front*, 24 N.Y.3d at 720, 28 N.E.3d at 19. While the Court's pronouncement of the law was not a novel concept, it made clear that even pre-litigation statements are protected, provided they are pertinent to a "good-faith anticipated litigation," and, at the pre-litigation stage, the privilege is qualified, rather than absolute. *Id.* (noting that "the privilege is lost where a defendant proves that the statements were not pertinent to a good-faith anticipated litigation"). The *Front* case is squarely on all fours with Yanowitz's Counterclaims, both in law and in fact, which should likewise be dismissed.

In *Front*, Philip Khalil ("Khalil") was a former employee of plaintiff Front, Inc. ("Front"). *Id.* at 715, 28 N.E.3d at 16. After Khalil tendered his resignation, Front discovered he was stealing its confidential information and using it to divert business away from Front and to his new employer, Eckersley O'Callaghan Structural Design ("EOC"). *Id.* at 716, 28 N.E.3d at 16. Front's counsel sent a pre-litigation letter to Khalil, which was also sent to EOC, in which it detailed Khalil's misconduct and demanded that Khalil cease and desist from using Front's confidential information and soliciting its clients. *Id.* at 716, 28 N.E.3d at 17. Front ultimately sued Khalil and EOC for, among other things, misappropriation of trade secrets and common-law unfair competition, and Khalil commenced a third-party action against Front's counsel for defamation, who moved to dismiss the third-party complaint for failure to state a cause of action. *Id.* at 716-17, 28 N.E.3d at 17. The Supreme Court, New York County, granted the motion, and both the Appellate Division and the Court of Appeals affirmed, the latter holding that

"statements made prior to the commencement of an anticipated litigation are privileged." *Id.* at

720, 28 N.E.3d at 19.

In so holding, the Court of Appeals noted the strong public policy reasons

supporting its decision, which are unquestionably implicated here:

> When litigation is anticipated, attorneys and parties should be free
> to communicate in order to reduce or avoid the need to actually
> commence litigation.  Attorneys often send cease and desist letters
> to avoid litigation.   Applying privilege to such preliminary
> communication encourages potential defendants to negotiate with
> potential plaintiffs in order to prevent costly and time-consuming
> judicial intervention. *Communication during this pre-litigation
> phase should be encouraged and not chilled by the possibility of
> being the basis for a defamation suit.*

*Id.* at 719, 28 N.E.3d at 19 (emphasis added).  And, because the letters in *Front* "were written in

the preliminary stages of an anticipated action" with "a good-faith basis to anticipate litigation[,]

and the statements in the letters were pertinent to that anticipated litigation," the Court concluded

that the letters were privileged and the third-party complaint was properly dismissed. *Id.* at 720,

28 N.E.3d at 19-20.

Here, the result should be no different.  As an initial matter, the factual

background of this case is strikingly similar to *Front*:  Brandon is a former employee of Divatex,

who left Divatex and joined its competitor, Keeco.  Divatex subsequently discovered that

Brandon was soliciting Divatex's customers on behalf of Keeco, and had reason to believe that

he was doing so through the use of Divatex's Confidential Information.  In sending the Letter,

Divatex demanded that Brandon cease-and-desist his wrongful conduct, copying Keeco to put it

on notice of the existence of Brandon's agreement with Divatex, including his post-employment

obligations, and to reserve all rights against Keeco for any damages resulting from Brandon's

conduct detailed in the Letter.  (Of course, Keeco could be held liable for, among other things,

aiding and abetting Brandon's breach of the Agreement and tortious interference with the

8

Agreement if Brandon's conduct continued after Keeco received the Letter.)  When Brandon did

not cease and desist, Divatex filed several claims against him based on the allegations in the

Letter.

In response, Brandon asserted three claims against Divatex and Greenstein, but

they all arise out of the statements in the Letter, whether written or spoken by Greenstein (in his

capacity as Divatex's Chief Executive Officer), or "ratified" by Divatex.  As in *Front*, these

statements are protected by a qualified privilege as they are, under any standard – including the

"extremely liberal" one applicable under New York law – "pertinent" to this litigation.  *See*

*Grasso*, 164 A.D.2d at 479, 564 N.Y.S.2d at 578.  Given that the Court has denied in its entirety

Brandon's motion to dismiss Divatex's claims against him (*see* ECF No. 59), any suggestion that

the litigation is not in good-faith and the privilege is lost should be categorically rejected.[6]

## II.

### BRANDON CANNOT ASSERT A CLAIM UNDER THE AGREEMENT OR THE NEW YORK LABOR LAW TO PAYMENTS FOR TIME HE DID NOT ACTUALLY WORK AND TO WHICH HE HAS NO CONTRACTUAL ENTITLEMENT

Brandon's fourth Counterclaim, asserted in an amended pleading more than a year

after his departure from Divatex, has no basis in law or fact.  Brandon's newly minted theory is

that, because Divatex allegedly "terminated" his employment after he "furnished Divatex with a

two (2) week notice that he would be leaving the employ of Divatex," and did not pay him for

the two weeks he intended to (but did not) work, he is entitled to $7,615.38, together with any

additional remedies provided for by the New York Labor Law.  Significantly, Brandon fails to

---

[6]   If any aspect of this litigation is to be considered not in good faith, it is the Counterclaims.  Not only are the Counterclaims utterly devoid of any basis under governing New York law, but it is telling that Ritchard Yanowitz, whose current employer (Keeco) received a similar letter, did not assert a claim for defamation, despite being represented by the same attorney.

allege that he actually worked for those two weeks, or that he had any contractual entitlement to such amounts.  For these reasons, the fourth Counterclaim fails.

The New York Labor Law defines wages as "the earnings of an employee *for labor or services rendered*."  N.Y. Labor Law § 190(1) (emphasis added).  In the absence of an allegation that he in fact performed services for Divatex during the two week period for which he seeks payment, Brandon has no claim under the New York Labor Law.  *See Lamb v. Money Transfer Sys.*, 12 Civ. 6584 (CJS), 2013 U.S. Dist. LEXIS 132007, at \*30 (W.D.N.Y. Sept. 13, 2013) ("The Court agrees with Defendant that the pleading fails to allege that Plaintiff is owed anything for work that he performed up to and including the date of his termination. Instead, . . . he is seeking base salary, commissions and bonuses that he *would have earned* if he had remained employed.") (emphasis added); *Giuntoli v. Garvin Guybutler Corp.*, 726 F. Supp. 494, 509 (S.D.N.Y. 1989) (noting that New York Labor Law's definition of wages "clearly states that unearned, future payments cannot be considered 'wages'"); *see also DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 87 (2d Cir. 2013) (affirming district court's dismissal of plaintiff's claims under New York Labor Law and FLSA because plaintiff failed to allege "that she actually worked overtime without proper compensation").  Simply put, Brandon is not entitled to payment for time he did not work.

Nor does Brandon have any contractual entitlement to these amounts under the Agreement.  On its face, the Agreement is clear: Brandon's employment was "for an unspecified duration," it "constitutes at-will employment," and it "may be terminated at any time, with or without good cause or for any or no cause, at the option of either the Company or [Brandon], *with or without notice*."  Agreement ¶ 1 (emphasis added).  In the absence of any contractual entitlement to payment for any notice period or otherwise, Brandon cannot assert a claim under

the New York Labor Law.  *See O'Grady v. BlueCrest Capital Mgmt. LLP*, 15 Civ. 1108 (SHS),

2015 U.S. Dist. LEXIS 77187, at *21 (S.D.N.Y. June 15, 2015) ("A 'plaintiff cannot assert a

statutory claim for wages under [section 193 of] the Labor Law if he has no enforceable

contractual right to those wages.'") (quoting *Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d

629, 632, 592 N.Y.S.2d 700, 703 (1st Dep't 1993)).  In fact, this Court, in this case, has already

stated as much.  *See* Memorandum Decision & Order dated May 21, 2015 (ECF No. 51) at 5 n.6

(noting that "plaintiff's NYLL claim 'rises and falls with his breach of contract claim'")

(citations omitted).  Thus, Brandon's fourth Counterclaim should be dismissed.

## CONCLUSION

For the foregoing reasons, Divatex and Greenstein respectfully request that the

Court dismiss the Counterclaims with prejudice, and grant Divatex and Greenstein such other or

further relief as the Court deems just and proper.

New York, New York
July 29, 2015

SEWARD & KISSEL LLP

By:    /s Anne C. Patin
       Anne C. Patin
       Michael B. Weitman
       One Battery Park Plaza
       New York, New York 10004
       (212) 574-1200 (telephone)
       (212) 480-8421 (facsimile)

*Attorneys for Divatex Home*
*Fashion, Inc. and David Greenstein*

SK 25855 0004 6723693

11